before bringing an action for the breach, under an idea that the tenant may, before he leases the premises, put them in good condition." This was recognized as the correct rule in Agate v. Lowenbein, 57 N. Y. 604, 605. It has been followed repeatedly.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

---

## SPIERO v. NEW YORK CENT. & H. R. R. CO.

### (Supreme Court, Appellate Term.   June 18, 1909.)

1. DAMAGES (§ 62*)—CARRIAGE OF FREIGHT—MISDELIVERY—REDUCTION.

A shipper, whose goods were misdelivered by the carrier to another carrier and transported to a wrong destination, was not bound to reduce the damages by reshipping the goods to the starting point and then to the proper destination, causing a delay of three or four weeks, rather than direct from the wrong to the proper destination, where under obligation to make prompt delivery, and also because the suggested action is more than required by the rule that plaintiff must use reasonable care to make the damages as small as possible.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 124–132; Dec. Dig. § 62.*]

2. CUSTOMS AND USAGES (§ 19*)—EVIDENCE—SUFFICIENCY.

In an action against a carrier for the misdelivery of goods to a steamship company and their transportation to a wrong destination, a custom offered in defense that the goods, being on the dock with other goods, no matter how marked, were properly taken aboard, should be unequivocally established.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. § 46: Dec. Dig. § 19.*]

3. CARRIERS (§ 174*)—CARRIAGE OF FREIGHT—MISDELIVERY—DEFENSES.

In an action against a carrier for misdelivery of goods to a steamship company and their transportation to a wrong destination, it is not a defense that the indorsement of the arrival notice, issued by the carrier, failed to direct the detention of a part of the goods, where the indorsement directed the goods to be delivered to the steamship company "per permit attached," and such permit specified that only a part of the goods were to be received on the steamship for shipment.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 174.*]

4. CARRIERS (§ 185*)—CARRIAGE OF FREIGHT—MISDELIVERY—EVIDENCE—SUFFICIENCY.

Two days prior to the arrival of goods over a carrier's line, and on April 20th, an order was given plaintiff directing the carrier to deliver the goods to him. It was stipulated that within a few days after April 22d plaintiff presented the order to the carrier, but that he refused to deliver the goods. On April 26th or 27th the carrier delivered the goods, with others, to a steamship company, and they were carried to a wrong destination. *Held*, in an action against the carrier for misdelivery of the goods, that the absence of a stipulated date of the receipt of the order by the carrier did not justify the presumption of its nonreceipt until after the steamship had sailed, but, on the contrary, the order being in plaintiff's hands April 22d, and he being obligated to make prompt delivery, the more reasonable presumption was that the carrier received the order prior thereto.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 185.*]

Lehman, J., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by Joseph Spiero against the New York Central & Hudson River Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before DAYTON, SEABURY, and LEHMAN, JJ.

Alexander S. Lyman (William Mann, of counsel), for appellant.

Oakes, Van Amringe, Schurz & Davis (Charles Oakes, of counsel), for respondent.

DAYTON, J. The facts are undisputed, and in brief are as follows: Plaintiff, through Geo. W. Sheldon & Co., gave an order to defendant for the shipment of 14 cases of desk lumber, marked "S. L. T., Paris," France, from Herkimer, N. Y., to the city of New York. At the same time defendant transported 10 cases of like lumber, marked "L. C. S., London," England, from Herkimer to this city, for Geo. W. Sheldon & Co. On the arrival of these 24 cases at New York, Sheldon & Co. received from defendant on arrival notice and thereupon indorsed the notice as follows:

"Deliver the within mentioned property subject to the above conditions to S. S. Mesaba, at [as] per permit attached."

The property was described in the notice as follows:

"10 C. S. Desks K. D. flat in white L. C. D. London.
"14 C. S.   "    "   "   "   "   "    S. L. T. Paris."

The Atlantic Transport Line issued its permit for shipment in part as follows:

"April 22, 1907.

"Please receive from G. W. Sheldon Co., for shipment to London, per steamship Mesaba, 10 cases desk lumber, to be delivered alongside Thursday."

Notwithstanding the explicit designation of the 14 cases in the notice, and the nonmention of them, but, on the contrary, the limited and only specification of 10 cases in the permit, the 14 cases were also put aboard the Mesaba and landed in London, where plaintiff's agent obtained and reshipped them to France at an expense of $360.23, which sum plaintiff sued to recover, and had judgment. Defendant appeals.

Appellant contends that plaintiff's damages could have been reduced by reshipping the goods to New York and again to France, causing a delay of but three or four weeks. One answer to this is that plaintiff was obligated to make prompt delivery at Paris. Another answer is that the course suggested on the facts here, goes beyond the rule of "reasonable exertion to render the injuries as light as possible." Appellant also contends that according to "custom" the 14 cases, with the 10 cases, being on the dock, no matter how marked, were properly taken aboard the Mesaba. The evidence offered on that subject consisted of opinions of defendant's witnesses, who did not cite a general parallel instance to support their opinions. Such a remarkable custom should be unequivocally established.

Appellant also contends that the indorsement of the arrival notice, "Deliver within mentioned property to S. S. Mesaba," fails to direct or require detention of part of the property; but the words "per permit attached" were a part of the indorsement, and as before stated the permit specifies only the 10 cases for London.   Furthermore, it is admitted that the property arrived in New York City April 22, 1907. Two days previously, and on April 20, 1907, Sheldon & Co. gave to plaintiff an order directing defendant to deliver the "fourteen cases of desk lumber S. L. T. Paris" to plaintiff.   (See Exhibit C.)   The parties stipulated that within a few days after April 22d plaintiff presented Exhibit C to defendant, but defendant refused to deliver said property.   The absence of a stipulated date of the receipt of said order by defendant does not justify the presumption of its nonreceipt until after the Mesaba had sailed.   On the contrary, the order dated April 20th being in plaintiff's hands April 22d, he being obligated to make prompt delivery at Paris, the more reasonable presumption is that defendant received the order prior to April 26th or 27th.   Defendant contracted to transport these 14 cases from Herkimer to this city, and was directed to deliver them to plaintiff, but neglected to do so through no fault of plaintiff.

The judgment is right, and should be affirmed, with costs.

SEABURY, J., concurs.

LEHMAN, J. (dissenting).   The plaintiff herein had not given an order to defendant through George W. Sheldon for the shipment of desk lumber.   He had ordered this lumber from the Horrocks Desk Company in Herkimer to fill an order which he had received from Paris, and that company had forwarded the same by way of defendant's railroad, addressed to the firm of G. W. Sheldon & Co., with instructions to the latter to have the lumber delivered on arrival to the order of the plaintiff.   The firm of G. W. Sheldon & Co. delivered to the plaintiff a written order upon the defendant; but the defendant refused and failed to deliver the said merchandise to the plaintiff.   These are the allegations of the complaint, and by stipulation of the parties it appears that the railroad company did not know of the giving of the order by the plaintiff to the Horrocks Desk Company, nor of the instructions of the latter to G. W. Sheldon & Co.   It further appears from the stipulation that these 14 cases of desk lumber marked "S. L. T. Paris" and 10 cases of desk lumber marked "L. S. C. London" were delivered to defendant at Herkimer as a car load lot, and the defendant had no knowledge of the fact that the plaintiff was in any manner whatsoever interested in any part of the consignment of lumber.

Upon these conceded facts it is evident that G. W. Sheldon & Co. were the legal consignees of the lumber, and if the defendant delivered the lumber to them, or upon their order before they received the order which Sheldon & Co. gave the plaintiff, then the defendant is not liable to the plaintiff.   When these goods arrived in New York, the defendant sent Sheldon & Co. a notice of arrival.   Upon the back of this notice there was printed a blank indorsement:

"Deliver the within property, subject to above conditions, to ———, at ———,"

—and·below a blank for the signature,·followed by the printed word "Consignee." This indorsement was filled in by Sheldon & Co. so that it read:

"Deliver the within mentioned property, subject to above conditions, to S. S. Mesaba, at per permit attached. G. W. Sheldon, Consignee."

The permit provided for shipment to London, per steamship Mesaba, of 10 cases desk lumber, to be delivered alongside Thursday, and contained various other clauses not material upon the question which we are considering. The defendant delivered the 24 cases upon the steamship Mesaba, and the sole question that we have to consider here is whether the defendant was justified under the terms of this order in making such delivery.

. Personally I feel that this order is not even ambiguous. It provides for the delivery of the within mentioned property, and the within mentioned property was 24 cases. It is true that the permit provided for only 10 cases; but the only reference to the permit was in the blank after the word "at," and it appears to me that it was incorporated in the order only to show the place of delivery, viz., alongside the steamship. By such an interpretation we give a logical and natural meaning to every word of the order. Conceding, however, that the permit is actually incorporated in the order in all its parts, then the order is ambiguous, and we should look to surrounding circumstances for an explanation of its meaning. The parties have stipulated, subject to objection as to its materiality:

"That it is the custom of forwarders of freight, when receiving arrival notices from defendant in the form of Exhibit A [the notice in this case], to return the same to defendant with instructions with reference to the delivery of the property shown on said arrival notices to steamships attaching to said arrival notices permit from the steamship company on the form of said Exhibit B [the permit in this case]; that the quantity of property shown on said forms frequently varies from the quantity shown on the arrival notices; and that it is customary for the steamship companies to accept a greater or less quantity than is shown on such permit."

. At the trial the plaintiff objected to all evidence as to the custom of the steamship company accepting more goods than was specified in the permit as incompetent, immaterial, and irrelevant; and the trial justice admitted the evidence, subject to be stricken out if, upon consideration, he should hold the objection good. The trial justice then filed with his decision a memorandum stating:

"I do not regard the proof of custom as material, as it was not shown that plaintiff had knowledge. Neither do I believe in so unreasonable a custom."

The trial justice was clearly in error. The knowledge of the plaintiff is utterly immaterial, because he was not the consignee, but claims under the consignee, and the consignee's knowledge was sufficiently shown; nor does it make any difference if the custom was unreasonable, because we are not called upon here to enforce a custom which tends to vary a written and unambiguous instrument, but only to consider an evidently ambiguous instrument in view of a conceded, though possibly unreasonable, custom. The proof of the custom was not only

material, but appears to me to be practically conclusive as showing the intent of the parties, and should not have been disregarded by the trial justice.

Judgment should be reversed, and a new trial ordered.